Pfeiffer v. Bauer.

## John C. Pfeiffer, et al., v. John Bauer, Jr., et al.

1. ASSUMPSIT—*when does not lie.* Notwithstanding the action of assumpsit is equitable in its nature and available to recover back money which in equity and good conscience the defendant ought not to retain, yet it is not a substitute for the proceeding in equity to correct mistakes and does not lie for the purpose of reviewing and revising a partnership settlement.

Action of assumpsit. Appeal from the Circuit Court of Shelby County; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the May term, 1905. Affirmed. Opinion filed October 9, 1905..

WALTER C. HEADEN, for appellants.

CHAFEE & CHEW, for appellees.

MR. JUSTICE BAUME delivered the opinion of the court.

Prior to January 1, 1904, appellants, John C. Pfeiffer and Bert Harves, and appellees, John Bauer, Jr., and Julius J. Kull, constituted a partnership engaged in the conduct of a general mercantile business in the village of Strasburg, appellants conducting the dry goods, groceries, boots and shoes and undertaking departments on the east side of the main store room and appellees conducting the hardware, furniture and implement departments on the west side of said store room. Separate books of account and cash registers were kept for the convenience of the business, by appellants and appellees, but all moneys were deposited into, and checked out of, one bank account, all the partners being equally interested in the entire business and property of the firm. In the regular course of business and without any reference to a dissolution of the partnership, an inventory of the partnership property, assets and liabilities was taken at the close of business, December 31, 1903, appellants invoicing the merchandise in the departments managed by them and appellees doing the like in the departments under their control. It is agreed that all of the parties understood and believed that the invoices as made and submitted were true and correct, and that as so invoiced the following was accepted by them as a true and correct inventory of the partnership assets, on January 1, 1904.:

| | | |
|---|---:|---:|
| Cash on hand......................................$ | 168 | 07 |
| Hardware, Furniture and Implements......... | 8,970 | 56 |
| Store Book Accounts........................... | 4,557 | 15 |
| Undertaking Accounts.......................... | 161 | 61 |
| Notes on hand................................. | 1,607 | 00 |
| Huckster Wagon and Team.................... | 320 | 00 |
| Fixtures....................................... | 1,454 | 49 |
| Undertaking Stock............................. | 1,507 | 62 |
| Dry Goods, Groceries, Boots and Shoes........ | 13,957 | 09 |
| Produce on Market............................ | 257 | 36 |
| Old Hardware store and lot.................... | 1,800 | 00 |
| Yakey lot..................................... | 650 | 00 |

Brick store building............................     5,700 00

          Total assets......................... $ 41,110 95

It is also agreed that the total indebtedness of the firm
on January 1, 1904, was $19,230.98.

In the latter part of January, 1904, appellee Bauer pro-
posed a dissolution of the partnership property, and after
some consideration an agreement was arrived at, amica-
bly, without friction or controversy, that the partnership
assets be divided and the firm dissolved and that the in-
ventories taken January 1, 1904, should be accepted as the
basis of such division.   In pursuance of such agreement, a
division was made, appellants Pfeiffer and Harves taking
jointly property of the firm at valuations, as follows:

Dry Goods, Groceries, etc..................... $ 13,957 09
Huckster Wagon and Team...................        320 00
Undertaking stock..........................      1,507 62
Produce on Market...........................       257 36
Real Estate.................................       650 00
Fixtures....................................       650 08
Book Accounts..............................      2,230 96
Notes......................................       745 07

                                            . $ 20,318 18

and appellees Bauer and Kull taking jointly, property of
the firm at valuations, as follows:

Hardware, Implements and Furniture......... $  8,970 56
Fixtures....................................       738 12
Real Estate.................................     7,500 00
Book Accounts..............................      2,231 37
Notes......................................       736 00

                                              $ 20,176 05

The difference between the total of the valuations as in-
dicated was satisfactorily adjusted between the parties at
the time of the division, and deeds were executed and de-
livered vesting title in the several parties, in accordance
with the terms of the agreement.   Thereafter, appellants

conducted their business in the store room formerly occupied by them, as tenants of appellees, under a lease expiring November 1, 1904.

In April, 1904, appellants listed their stock of dry goods, groceries, etc., with one Martin Hamm, a broker, for sale or trade, at a valuation of $14,000, and about the middle of May following, Hamm succeeded in trading the same, subject to invoice, to J. B. Shafer & Co., of Fairfield, Illinois, for certain real estate. The invoice then taken of the stock of dry goods and groceries amounted to about $11,000, and it was apparent that if the prior invoice of January 1, 1904, which had been accepted by all parties as the basis of the division, was correct, there was a discrepancy of about $3,000 in the value of such stock. Appellants were then moved to make a more careful examination of the invoice of January 1, 1904, and such examination disclosed that certain partnership property consisting of store furniture and fixtures, produce on market, horses and wagons separately invoiced at $2,031.85, and listed in the same book in which the stock of dry goods and groceries was listed, had also through inadvertence, been improperly included in the total valuation of $13,957.09, as dry goods and groceries. An examination of the invoice book prepared by appellants also disclosed other errors in footings and in carrying out the valuation of articles invoiced, amounting to $945.98, of which $907.05 was against appellants and $38.93 against appellees, leaving $868.12 as the net amount against appellants on account of such errors.

Appellants brought this suit in assumpsit against appellees to recover the sum of $2,899.97, claimed to be due appellants by reason of the alleged mistakes. The declaration consists of the common counts, and the cause was tried by the court, without a jury, resulting in a finding and judgment against appellants.

All the alleged mistakes relied upon by appellants as grounds of recovery appear in the invoice book prepared by appellants. The original memoranda of the invoice taken by appellants were made by them on small slips of

paper, and subsequently copied therefrom by them into a bound blank book. Appellees do not admit that the invoice slips were accurately copied into the book, and many of such slips having been lost or destroyed it is impossible precisely to determine that fact. It is, however, practically conceded that the alleged errors are unmixed with any element of fraud on the part of appellants.

Manifestly the partners had entire confidence in each other and in the accuracy of the statements made by each to the other as to the quantity and value of the partnership property invoiced by the respective managers of the several departments of the partnership business. Each had access to the invoice taken by the other and ample opportunity to examine and verify the accuracy of the same, but they chose to rely solely upon the correctness of the statements in gross made by each to the other.

There is evidence in the record tending to show it was understood and agreed between the parties that if any mistakes were afterwards discovered in the matter of the division, they should be corrected, and the evidence also shows that some mistakes involving comparatively small amounts were subsequently discovered and amicably and satisfactorily adjusted.

While we fully recognize the action of assumpsit as equitable in its nature, and available to a plaintiff to recover back money which, in equity and good conscience, the defendant ought not to retain, we are constrained to hold it is not sufficiently elastic to be available to appellants as a remedy upon the facts in this case. Assumpsit lies only for money, and only when the rights of the parties will be adequately conserved by the payment and receipt of money.

In the case at bar appellants supposed they were receiving, in the division of the partnership property, a stock of dry goods, groceries, etc., of the value of $13,957.09, and appellees supposed they were receiving the equivalent in value of such stock in other property of the firm. It may well be that appellees would be satisfied to take the property received by them in exchange for their interest in the

property received by appellants, on the basis of the valuations as then determined, and be entirely unwilling to receive the same property on the basis of different valuations. The effect of a recovery by appellants against appellees in this case would be to compel appellees to keep the property received by them in the division and to pay appellants a large sum of money as boot. It would force appellees to consummate a contract never entered into or contemplated by them, and one, doubtless, they would never have consented to be bound by. True, the valuations placed upon the property involved in the exchange were agreed to by all the parties, but such valuations were so agreed to in contemplation of an exchange of property and not with a view to its purchase and sale for cash. Appellants insist upon a strict performance of the contract for exchange, so far as it relates to the specific property taken by the respective parties, and in addition that appellees shall pay them the sum of nearly $3,000. This, they cannot do, in the absence of proof of fraud or other improper conduct on the part of appellees.

Before appellants can be relieved from the consequences of a bargain induced by their own mistakes, they must do equity by placing appellees in a position corresponding as nearly as may be with that occupied by them before the execution of the contract of exchange. This appellants can only do in a court of equity.

The agreement of the parties to correct any mistakes that might be discovered in the division of the property, was clearly not contemplated to cover mistakes of the magnitude of those here involved, but was in anticipation of the discovery of such clerical errors as would not materially change the status of the parties and could be readily and amicably adjusted.

The judgment of the Circuit Court is right and will be affirmed.

*Affirmed.*